Alan Van Praag, Esq.
Michael O. Hardison, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-5902
212.779.9910
avanpraag@evw.com
mhardison@evw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BULK HARBOUR SHIPPING INC., <br><br>                    Plaintiff, <br><br> -against- <br><br> MERCANTILE MARINE MANAGEMENT LTD., <br><br>                    Defendant. | _____ ( ) <br><br> **VERIFIED COMPLAINT** <br> **IN ADMIRALTY** |

Plaintiff, Bulk Harbour Shipping Inc., ("BHS" or "Plaintiff"), by its attorneys, Eaton & Van Winkle LLP, for its complaint against Defendant, Mercantile Marine Management Ltd. ("MMM" or "Defendant"), upon information and belief, alleges as follows:

## JURISDICTION

1.  This is a case of admiralty and maritime jurisdiction, 28 U.S.C. § 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

## PARTIES

2. At all relevant times, Plaintiff, was and still is a corporation or other business entity organized and existing under the laws of a foreign country with an office and place of business located at Global Bank Tower, Floor No. 18, Office No. 1801, 50th Avenue, City of Panama, Republic of Panama.

3. At all relevant times, Defendant MMM was and still is a corporation or other business entity organized and existing under the laws of a foreign country with offices and place of business located at No. 441, K. Cyril C. Perera Mawatha, Colombo 13, Sri Lanka.

## UNDERLYING EVENTS

4. On or about October 6, 2008, Plaintiff BHS, as owner of the vessel M/V BULK HARBOUR, through its technical managers in Germany, FIS Hanse Schifffahrt GmbH & Co. KG, and Defendant MMM, as crew managers, entered into maritime contracts in which Defendant agreed to provide and manage the full crew for the M/V BULK HARBOUR for Plaintiff, the terms of which are set forth in the maritime contracts (the "Contracts") attached hereto as Exhibit A.

5. The Contracts set forth all essential terms of the maritime agreement between Plaintiff and Defendant.

6. The principal objective of the Contracts was for the provision and management of crew members while on board to be used to operate and maintain the vessel.

7. Therefore, the principal objective of the Contracts was an integral part of maritime commerce, the nature and character of the Contracts were inherently

2

maritime, and the Contracts themselves were maritime contracts. (See *Williamson v. Recovery Limited Partnership*, 2008 U.S. App. LEXIS 18012, at *11-13 (2d Cir. 2008) (explaining that the proper inquiry for determining whether a contract is maritime is whether the contract's principal objective is maritime commerce when considered in light of the contract's 'nature and character'") (quoting *Norfolk Southern Railway Co. v. James N. Kirby Pty, Ltd.*, 543 U.S. 14, 24 (2004)).

8.  The Contracts indentified, *inter alia*, the subject vessel, the owner, the crew managers, the obligations of the crew managers, and the owner's obligations.

9.  The Contracts obligated Defendant to supply suitable, qualified crew for the vessel as required by the Plaintiff in compliance with international standards, including but not limited to, selection and training of crew members, supervision of their efficiency, and ensuring that the applicable legal requirements are satisfied in respect of manning levels, rank, qualification and certification of the crew and employment regulations.

10.  In exchange for such services, Plaintiff agreed to pay sums due to Defendant under the provisions of the Contracts.

11.  Defendant failed to properly manage crew members while on board the M/V BULK HARBOUR pursuant to the terms of the Contracts. As a result, the vessel's condition severely deteriorated. Damages to the vessel included, but were not limited to, damaged hydraulic system, cargo holds, sealing surfaces, main drain systems, anchor chain, and destroyed cargo. The lack of vessel maintenance is directly related to the shoddy work performed by the crew members caused by the Defendant's mismanagement.

12. On multiple occasions, Plaintiff immediately alerted Defendant to the quality of the crew members and the resulting poor vessel conditions, yet Defendant took no actions in response to Plaintiff's reports.

13. As a result of the vessel's damaged condition, the M/V BULK HARBOUR has sustained a significant loss of value. In order to keep the vessel in compliance with international standards, Plaintiff must undertake to make substantial repairs. Such repairs are estimated at $300,000.

14. Additionally, due to the vessel's condition and the inability to deliver the vessel to a charterer within the cancellation date, Plaintiff lost a charter party. The loss of the charter party is valued at $1,206,000.

15. Defendant's reckless and negligent mismanagement of the crew constitutes a breach of the maritime contracts.

## FIRST CAUSE OF ACTION

16. Paragraphs 1 through 15 of this Complaint are repeated and realleged as if the same were set forth here at length.

17. Defendant MMM has failed to perform its obligations pursuant to the Contracts between Plaintiff and Defendant and has thereby breached the subject maritime agreements.

18. Plaintiff, by reason of the premises, has sustained damages, as best can now be estimated, in the amount of $1,506,000.

## RULE B ATTACHMENT

19. Paragraphs 1 through 19 of this Complaint are repeated and realleged as if the same were set forth here at length.

20. Pursuant to the terms of the Contracts, all disputes between the parties are to be resolved by arbitration in London pursuant to English law.

21. This action is brought to obtain jurisdiction over Defendant MMM and to obtain security in favor of Plaintiff in respect of its claim against Defendant and in aid of anticipated London arbitration proceedings.

22. This action is also brought to obtain security for additional sums to cover Plaintiff's anticipated costs in arbitration and arising from interest, all of which are recoverable under English law and the rules applicable to London arbitration (see *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 265 (2d Cir. 2002) where the attachment that the Court of Appeals reinstated covered "an amount that includes interest and anticipated attorneys' and arbitrators' fees.").

23. Upon information and belief, and after investigation, Defendant cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprised of, *inter alia*, cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant ("Assets"), including, but not limited to, Assets at, being transferred through, or being transferred and/or wired to or from various banking institutions and/or other business entities.

24. Plaintiff's belief that the Defendant's property may be found within the Southern District of New York is based upon specific information developed during the

course of Plaintiff's business dealings with Defendant and provided to Plaintiff's attorneys by Plaintiff BHS.

25. In particular, Plaintiff made payments to Defendant in connection with the Contracts by causing two dollar-denominated electronic funds transfers (the "Defendant's EFTs") to be sent from the Plaintiff's bank in Germany to the Defendant's bank in Sri Lanka (annexed hereto as Exhibit B are copies of the concerned EFT instructions).

26. The two EFTs were sent via Deutsche Bank in New York and Standard Chartered Bank in New York. Therefore, Defendant's recent actions demonstrate that the Defendant receives dollar-denominated EFT payments through banks located within the Southern District of New York. Thus, there is a strong likelihood that Defendant's property may be found within the Southern District of New York in the form of EFTs being processed through intermediary banks located in the District.

27. Based upon the foregoing information regarding Defendant's recent receipt of payments via Deutsche Bank and Standard Chartered Bank in New York as intermediaries for EFTs sent by Plaintiff, Plaintiff seeks authorization to serve the following banks located within the Southern District of New York as garnishees in this matter:

> Wachovia Bank N.A.;
> Standard Chartered Bank;
> Lloyds TSB Bank TLC;
> JP Morgan Chase & Co.
> HSBC Bank U.S.A., N.A.;
> Deutsche Bank AG;
> Credit Suisse First Boston;
> Citibank, N.A.;
> BNP Paribas;
> Bank of America, N.A.;

        The Bank of New York Mellon
Atlantic Bank of New York;
ABN Amro Holdings N.V.;
American Express Bank Ltd.;
Fortis Bank; and
Barclays Bank.

28.    The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by Plaintiff against Defendant includes: (i) the principal claim for breach of maritime contracts in the amount of $1,506,000; (ii) interest, which is recoverable in London arbitration, in the amount of $271,080.00 (calculated at the rate of 6 percent per annum, for a period of three years, the estimated time for completion of the proceedings in London); and (iii) estimated attorney's fees and disbursements, together with the costs of the arbitration, including arbitrator's fees, all of which are recoverable in London arbitration, in the amount of $250,000.00, for a total claim of $2,027,080.00.

## RESERVATION OF RIGHTS TO ARBITRATE DISPUTES WITH DEFENDANTS

29.    The Contracts provide that any disputes between Plaintiff and Defendant are to be arbitrated in London pursuant to English law.

30.    Plaintiff expressly reserves the right to arbitrate the merits of its dispute with Defendant and brings this action solely to obtain *quasi-in-rem* jurisdiction and security for its damages, interest and the costs of London arbitration.

------------------------------ continued on next page ------------------------------

WHEREFORE, Plaintiff prays as follows:

1. That process in due form of law according to the practice of this Court may issue against Defendants;

2. That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the district owned by Defendant or in which Defendant has a beneficial interest up to the amount of $2,027,080.00.

3. That judgment be entered against Defendant and in favor of Plaintiff in the amount of $2,027,080.00 plus interest, costs, and attorneys' fees; and

4. That the Court grant such other, further and different relief as may be just, proper and equitable.

Dated: New York, New York
July 10, 2009

EATON & VAN WINKLE LLP

By: _____
Michael O. Hardison

3 Park Avenue
New York, New York 10016-5902
212.779.9910

Attorneys for Plaintiff

## VERIFICATION

MICHAEL O. HARDISON, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.    I am an attorney associated with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2.    I have read the foregoing complaint and know the contents thereof and the same are true to the best of my knowledge, information and belief. The sources of my information and the grounds for my belief are communications and other papers received from the Plaintiff's attorneys in India and an examination of the paper relating to the matters in suit.

3.    The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this district.

Dated: New York, New York
       July 10, 2009

I declare under penalty of perjury that the foregoing is true and correct.

_M. O. Hardison_
Michael O. Hardison

Alan Van Praag, Esq.
Michael O. Hardison, Esq.
EATON & VAN WINKLE LLP
3 Park Avenue
New York, New York 10016-5902
212.779.9910
avanpraag@evw.com
mhardison@evw.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BULK HARBOUR SHIPPING INC., <br><br> Plaintiff, <br><br> -against- <br><br> MERCANTILE MARINE MANAGEMENT LTD., <br><br> Defendant. | _____ ( ) <br><br> **DECLARATION** |

BONNIE R. KIM, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.   I am an attorney associated with the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff Bulk Harbour Shipping Inc., and I am familiar with the facts of this matter.

## **DEFENDANT IS NOT PRESENT IN THE DISTRICT**

2. I execute this declaration in compliance with the provisions of Rule B(1) of the Supplemental Rules of Certain Admiralty and Maritime Claims and in compliance with the provisions of Local Admiralty Rule (B)(1).

3. To the best of my information and belief, Defendant, Mercantile Marine Management Ltd., ("Defendant"), cannot be found within this District as defined by the relevant state laws, the Federal Rules of Civil Procedure, and as construed in current case law within the Southern District of New York.

4. I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entities Database. This database contained no record of Defendant being either a New York corporation or a foreign corporation licensed to do business in New York.

5. I also checked the internet telephone directories for New York State and contacted the telephone information operator regarding listings for Defendant within New York City. None of these sources contained a listing for the Defendant within New York City.

6. I have been unable to locate any general or managing agents within this District for the Defendant.

7. I have additionally reviewed current case law within the Southern District of New York and am of the opinion that Defendant cannot be found within the Southern District of New York within the meaning of Rule B(1).

8. It is for the foregoing reasons that I request, on behalf of Plaintiff, that the Court execute the accompanying Order for Issuance of Process of Maritime Attachment and Garnishment.

## PRAYER FOR RELIEF TO SEAL CASE TEMPORARILY

9. Upon information and belief, it is the practice of many law firms in the maritime bar to conduct a daily review of the electronic docket sheet of the Southern District of New York for all maritime actions filed in the district and to inform the Defendant named therein of any ex parte orders of attachment pending against them, thus permitting the purpose of the ex parte application to be defeated.

10. Upon information and belief, it is the practice of certain publications, including the publication "Tradewinds," to publish the names of defendants named in ex parte orders of attachment, thereby permitting the purpose of the ex parte application to be defeated.

11. Upon information and belief, "Tradewinds" has recently published the names of parties in Rule B proceedings, the amounts of the attachments and other details of the actions, thereby permitting the purpose of the ex parte application to be defeated.

12. This Court has an interest in preserving the efficacy of the ex parte order it issues that supersedes the interest in maintaining a public docket during the brief period during which assets are attached and notification of such attachment is provided to the defendant.

13. Electronic notification to defendants through public access to ex parte orders of maritime attachment defeats the purpose of obtaining an order ex parte. Such

prior notification eliminates the element of surprise and allows defendants to structure their financial transactions to avoid the attachment, thereby undermining the purpose of the attachment.

14. For the foregoing reasons, Plaintiff requests that the Court issue an Order temporarily sealing the court file in this matter, including the Verified Complaint and all other pleadings, affidavits, declarations and orders herein, until further notice of this Court or until notification to the clerk that property has been attached.

15. This request is narrowly tailored to Plaintiff's needs. Following attachment of the property, the case should be unsealed, as Defendant will have been apprised of the attachment order and the underlying rationale for sealing the case will no longer apply.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
    July 10, 2009

_____
Bonnie R. Kim